Tompkins, J.,
dissenting.
Moses Block and others, filed their petition in the Circuit Court of St. Louis county, praying that certain lots lying in the city of St. Louis, might be divided among themselves and others, children of Simon Block, deceased, in equal parts according to the last will of the deceased ; by which will Delia, the wife of said Phineas Block, was expressly excluded from having any part of the estate of the deceased. Phineas Block and Delia, his wife, answered, admitting the facts stated in the petition, but contending that Delia, the wife of Phineas and one of the children of the deceased, not being provided for in the last will and testament of the deceased, and not having had an equal part of the testator’s estate in his lifetime, was entitled to an equal portion of the estate of the testator with the other children of the deceased. The Circuit Court decided against the claim of Phineas Block and his wife 5 and to reverse'this judgment they bring the cause into this Court by writ of error.
The words of the statute are, “ that if any person shall make his or her last will and testament, and die leaving a child or children, or the descendants of any child or children, (in case of their death,) not provided for in such will, although such child or children be born after the death of the testator, every such testator so far as shall regard such child or children, or their descendants) shall be deemed to die intestate, and such child or children, or their descendants, shall be entitled to such portion of the estate of the testator, real and personal, as if he or she had actually died intestate) and the same shall be assigned to him, her or them, accordingly; and all the other legatees, devisees and heirs, shall refund their average or proportional part provided that such child or children, or their descendants, so claiming, shall not have had an equal portion of the testator’s estate bestowed on him, her or them, in the-testator’s lifetime by way of advancement.” Rev. Code, p. 795.
On the pail of the plaintiffs in error it is contended, that the provision required by the act to be made in the testator’s will for the child, must be something substantial, that it is a'mere evasion to say that it is provided in the will that the child shall have? nothing. On the part of the defendants in error it is contended, that the terms used in the act must either mean that each child must have an equal part of the father’s-estate, or he must be allowed to cut the child off by merely naming it in the will and refusing to give him any thing, or a sum- merely nominal. For it is said no one? can tell what will be proper and suitable provision, so much do the world differ in opinion about this matter; all, too, must be accommodated to the value of the estate of the deceased. It is insisted also-, that this construction of the above recited section of the act concerning wills and testaments, (section 20,) is supported by the 24th section of the same act. Rev. Code, p. 796.. This section is in these words: “That all Courts and others concerned in the execution of last wills and testaments, shall have due regard to the directions of the will, and the true intent and meaning of the testator in all matters and things that shall be brought before them concerning the same 5” but the previous section (20th) required the testator to provide for his child, unless he would have it provided for by the law; and as far as he obeyed the law, his will was to be construed under the 24th section and no farther. We are left then where we began, and the question still remains, what is the provision which the act requires a father to make for his child ? If the act required no more at the hand of the testator than that he should name the child in his will, then the old law would have been more intelligible. The old law was this, “when any person shall make his or her last will and testament and omits to mention the name of any child *411 or children, if living, or the legal representatives of such child or children,” &c. See Laws Mo. Ter., December session, 1814, p. 131, or Geyer’s Digest, p. 431. Here language is used, of the meaning of which no doubt can be entertained. Why change the phraseology if no change of meaning was intended ? Or can it be supposed that a Legislature which required a master to maintain and support his manumitted infant slaves, (see Rev. Code, p. 744,) intended to permit the same man, or indeed any other, to cast his infant children on the charity of the community. Vanity and pride may find great difficulty in settling a provision proper to be made by a rich and unnatural father for his child; but if it ever should happen, under the construction of the law contended for by the defendants in error, that such a parent cast his children on the world, the County Courts will be compelled to ascertain how much Of the county funds will be r equired for such purpose. I find no difficulty in so construing the law, as to compel an unnatural father to make a comfortable provision for his children, and still to allow him to provide more liberally for such as either needed or merited a more liberal provision. For instance, if a man’s fortune were moderate and he died leaving many children, some young and unable to work, and others grown up and educated, it would not in many cases be improper to say that those grown up and educated were already provided for, as he might have expended on their education as much as would be left to the younger and weaker, or in the language of the said 20th section, they already had an equal portion of the testator’s estate bestowed upon them byway of advancement. But did no evil exist under the old law to remedy which, a change in the law might have been necessary? With some few exceptions our statutes make a very good will for those who neglect to make one for themselves. But in most of the cases where men die, leaving a will and children by two wives, it may be safely asserted that the children of the first wife are left unprovided for, and under the construction of the statute here contended for by the defendants, will continue to be left unprovided for, unless indeed it be a provision to mention his name in the will by way of reminding him that an unnatural father had remembered in his last moments to leave the last token of unkindness. This is no small evil. Personal property is the favorite of the State. Our legislative bodies, in spite of preconceived prejudices, have been compelled to allow executors and administrators in many cases to sell real property to pay-debts, and to retain the personal. (See Rev. Code, p. 107.) Married women are allowed with certain formalities to sell the lands that descend to them, and when the father dies intestate, in almost every instance the land is sold on application to the Circuit Court, because the quantity is so small that it cannot be divided in kind, without great prejudice to the owners. (See Rev. Code, c. p. 611, sec. 4.) Thus the real estate of the wife becomes personal esla’e and vested absolutely in the husband. Even if a Court of Chanceiy could pursue the money thus raised, and treat it as real property and keep it for the wife’s use, the cost of suits would in many cases amount to as much as the principal. The property then of the first wife, whether it be real or personal, becomes generally the absolute property of the husband ; he marries a second, or perhaps a thiid wife, and the children of the last wife take the whole. The cases of those who may be reduced to want are those which a legislative body might reasonably be supposed to contemplate with most anxiety. Our institutions, -republican in their character, do not seek to extend the empire of the father over the child beyond the age of twenty-one years. If he wish it he must acquire such empire by gentle means. Had the Legislature wished to enable the father to hold the power *412 here contended for, as a rod over an undutiful child, nothing could have been easier than to copy the'old law into the Revised Code; as the statute is now worded I cannot hut conclude that great violence is done to language when this construction is put upon the words “ not provided for.” In my opinion the judgment of the Circuit Court ought to be reversed.